UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRYAN ALLEN CARY,

        Plaintiff,                  Case No. 1:13-cv-431

v.                                            Honorable Robert J. Jonker

M. ROBINSON et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns, McKee, Youngs, Smolinski, Hull, Nevins, Morrow, Macauly, Randle, Novak, Frank, and Unknown Parties ##2 and 4. The Court will serve the complaint against the remaining Defendants. The Court also will deny Plaintiff's motion to appoint counsel (docket #3).

**Discussion**

I.  Factual allegations

Plaintiff Bryan Allen Cary presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison, though the actions about which he complains occurred while he was housed at the Bellamy Creek Correctional Facility (IBC). Plaintiff sues MDOC Director Daniel Heyns and an unknown administrator of the MDOC Office of Legal Affairs (Unknown Party #2). He also sues the following IBC officials: Grievance Coordinator M. Robinson; CPC Manager B. Youngs; Classification Director A. Smolinski; Resident Unit Managers (RUMs) C. Hull and (unknown) Mott; Warden Ken McKee; Nurses James R. Leland and Sherri Gregurek; Dentist Thomas Cooley; an unknown male doctor or physician's assistant (Unknown Party #1); Dental Assistant (unknown) Gurnsey; CPC employee William Morrow; Sergeants (unknown) Bennickson, (unknown) Moyer and Unknown Party #3; Captain (unknown) Makara; Assistant Resident Unit Supervisors (unknown) Nevins and (unknown) Hadden; Deputy Warden (unknown) Macauly; Lieutenants (unknown) Randle and J. Frank; Hearing Investigator B. Novak; an unknown Grievance Specialist (Unknown Party #4); and Corrections Officers (unknown) Chaplin, (unknown) Miller, (unknown) Shatick, (unknown) Wickwire, (unknown) Fryburger, and (unknown) Hickok.

In his complaint, Plaintiff makes allegations about the conditions of his confinement at IBC, to which he was transferred on March 27, 2012. First, he contends that Defendants Heyns and Unknown Party #2 unconstitutionally created MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ B(1)(c), which prohibits the grant of indigent status to a prisoner who was terminated from a work assignment within the preceding 12 months for unsatisfactory performance or as the result of being found guilty of a misconduct. Plaintiff also alleges that Defendants Youngs, Smolinski, Hull,

McKee, Morrow, and Macauly unconstitutionally enforced the indigent-status policy. He contends that Defendants improperly denied him indigent status under the policy, because he lost his job as the result of a transfer, not because he was convicted of a misconduct for fighting. He was convicted of a misconduct charge for fighting only after he left his position. Plaintiff further contends that, because he was not permitted indigent status, he was unable to obtain basic hygiene items, such as a toothbrush and toothpaste, and he was unable to purchase pain relievers in the prison store, which were necessary to treat the pain attendant to his serious medical conditions.

Second, Plaintiff alleges that Defendants Gregurek, Cooley, Gurnsey, Leland, and an unknown doctor or PA (Unknown Party #1) were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. He complains that Defendants Gregurek and Leland denied him pain medications for his headaches. Instead, they directed him to purchase over-the-counter pain relievers through the commissary, despite knowing that Plaintiff was not on indigent status and had no funds. Plaintiff also alleges that Defendant dental staff, Cooley and Gurnsey, failed to fill his decayed teeth and ignored his tooth pain, telling him to buy over-the-counter medications even when they knew he had no ability to buy them. Further, Plaintiff contends that, on August 29, 2012, Unknown Party #1 refused to suture a five-inch cut on Plaintiff's bicep because the wound was self-inflicted. On September 29, 2012, Plaintiff obtained another razor and cut his forearm deeply, outside and inside. Unknown Party #1 again refused to suture the wounds because they were self-inflicted. Neither wound has healed properly.

Third, Plaintiff complains that Defendant Grievance Coordinator Robinson retaliated against him on numerous occasions by rejecting his grievances[1] and placing him on modified grievance access.[2] Plaintiff also asserts that, on September 12, 2012, Robinson filed a misconduct charge alleging insolence, allegedly in retaliation for Plaintiff's threats to sue Robinson. Plaintiff also alleges that Defendants Youngs, McKee, Heyns, Macauley, Mott, and the grievance specialist named as Unknown Party #4 approved his placement on modified access and/or denied his grievance appeals. Further, Plaintiff alleges that Defendants Randle, Novak, Frank, and Macauly either found him guilty on the misconduct charge filed by Robinson, refused to give him an appeal form, or denied his appeals from the misconduct conviction.

Fourth, Plaintiff asserts that he is a practitioner of the Native American religion. As part of his religious practices, Plaintiff keeps and wears a medicine bag. When he was placed in segregation on August 16, 2012, Defendant Miller confiscated Plaintiff's medicine bag, telling him that he was not permitted to possess the bag while he was housed in segregation. Thereafter, Defendants Miller, Shatick, Makara, and Unknown Defendant #3 allegedly opened and fingered the contents of the bag, thereby desecrating Plaintiff's religious object. In addition, Defendants Bennickson, Chaplin, Moyer, Hickok, Hadden, Mott, Wickwire, Fryberger, and Unknown Party #3 all refused to return Plaintiff's medicine bag. Plaintiff complains that these Defendants denied his

---

[1]Prisoners are required to file grievances in a responsible manner, and grievances may be rejected for, among other things, the use of profanity or demeaning language, or because they are vague, duplicative, untimely, or raise multiple unrelated issues. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ G (eff. July 9, 2007).

[2]Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language . . . or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. He also claims that he was denied his right to equal protection when another Native American prisoner who was housed in segregation was permitted to possess his medicine bag and other segregation prisoners were permitted to have their religious objects.

For relief, Plaintiff seeks nominal, compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Lack of Allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir.

2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendant Nevins in the body of his complaint. His allegations against Defendant Nevins therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### B. Interference with Grievances

Plaintiff alleges that Defendant Robinson repeatedly rejected or denied his grievances and placed him on modified grievance access. Plaintiff also contends that Unknown Party #4 interfered with the filing of a grievance. Further, Plaintiff complains that Defendants Youngs, McKee, Macauly, and Mott either placed him on modified grievance access or approved his placement on grievance restriction. Finally, he claims that Youngs, McKee, Heyns, and Macauly denied one or more grievances or grievance appeals. Plaintiff contends that Defendants' actions violated his right to due process and constituted retaliation in violation of the First Amendment.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance

procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct in denying or restricting his grievances did not deprive Plaintiff of due process.

To the extent that Plaintiff claims that his grievances were denied, rejected or restricted in retaliation for his having filed prior grievances, he fails to state a First Amendment claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999). Plaintiff, however, cannot demonstrate that Defendants' subjected him to adverse action when they denied his requests for grievances or otherwise interfered with the grievance process. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker*, 128 F. App'x at 446. Placement on

modified access does not prohibit an inmate from utilizing the grievance process. *Walker*, 128 F. App'x at 445-47; *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past. In addition, even if an inmate is improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If a prisoner is improperly denied access to the grievance process, the process is rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

In light of the foregoing, Plaintiff's allegations that Defendants Robinson, Youngs, McKee, Heyns, Macauly, Mott, and Unknown Party #4 interfered with his ability to file grievances fail to state either a due process or a retaliation claim.

### C.     Misconduct Charge

Plaintiff contends that Defendant Robinson charged him with insolence on September 12, 2012, in violation of his right to due process and in retaliation for threatening to sue Robinson. In addition, Plaintiff contends that Defendants Frank and Randle upheld the misconduct ticket, that Defendant Novak refused to provide Plaintiff an appeal form, and that Defendant Macauly denied his appeal, all in violation of his right to due process.

1. Due process

Plaintiff alleges that Defendant Robinson violated his right to procedural due process by charging him with the Class II misconduct of insolence, for which Plaintiff received a punishment of 20 days loss of privileges. Plaintiff alleges that Defendants Randle, Novak, Frank, and Macauly also violated his right to due process by either finding him guilty on the misconduct charge, refusing to give him an appeal form, or denying his appeals from the misconduct conviction.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA.) Therefore, because a charge of insolence is a Class II misconduct, Plaintiff could not have been denied good time or disciplinary credits as a result of his conviction. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim

against Defendants Robinson, Randle, Novak, Frank, and Macauly arising from his Class II misconduct conviction.

### 2. Retaliation

Upon initial review, the Court concludes that Plaintiff has adequately alleged a retaliation claim against Defendant Robinson based on his allegations concerning the September 12, 2012 misconduct charge.

### D. Denial of Indigent Status

Plaintiff complains that Defendants Heyns and the unknown Office of Administrative Affairs Administrator (Unknown Party #2) violated his Eighth Amendment rights by adopting MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ B(4), which prevents a prisoner from obtaining indigent status for twelve months after being terminated from a work assignment for unsatisfactory performance or for being found guilty of a misconduct charge. He contends that the twelve-month exclusion from indigent status results in a prisoner being denied minimally necessary hygiene items and, in his case, over-the-counter pain relievers. Plaintiff alleges that Defendants Youngs, Smolinski, Hull, McKee, Morrow, and Macauly violated the Eighth Amendment when they misapplied the indigence policy based on an incorrect finding of fact. Plaintiff asserts that he was not terminated from his employment either for unsatisfactory performance or because he had been found guilty of a misconduct. He contends that he was terminated as a consequence of a transfer, and his fighting misconduct occurred after the transfer.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff's allegations appear to raise both a facial challenge and an as-applied challenge to the restriction on indigent status under MICH. DEP'T OF CORR., Policy Directive 04.02.120(B)(4).[3] In order to demonstrate that a law or policy is facially invalid, a "challenger must establish that no set of circumstances exists under which the [policy] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Policy Directive 04.02.120(B)(4) precludes a prisoner who

---

[3] Under the MDOC indigent-prisoner policy, "an indigent prisoner shall be provided with a loan not to exceed $11.00 per month. The amount loaned shall be the difference between $11.00 and the prisoner's beginning spendable balance for the preceding month as calculated pursuant to Paragraph B added to the total funds received during that month. The loan shall be used only to purchase mandatory health care products, over-the-counter personal care products, and hygiene products as identified on the Standardized Store List developed pursuant to PD 04.02.130 'Prisoner Store', and as available for purchase through the prisoner store." MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ D.

has been terminated from his employment as the result of misconduct from obtaining indigent status for twelve months. *Id.* However, the mere denial of indigent status does not, on its face, authorize the denial of essential needs under the Eighth Amendment. Although a prisoner denied indigent status is not automatically entitled to an indigent loan of up to $11.00 per month, nothing about the denial of indigent status authorizes prison officials to ignore their duties to provide food, health care and essential hygiene items. Indeed, other portions of the MDOC policy expressly require that prison officials provide such care. *See* MICH. DEP'T OF CORR., Policy Directive 03.04.121 (directing that a prisoner "shall be offered necessary health care services (i.e., medical, dental, and optometric services) regardless of ability to pay . . . ."); Policy Directive 04.07.100 ¶¶ F, G (requiring that all prisoners be served three meals each day and that those meals satisfy national nutritional and caloric recommendations). When the previous are read together, the policy of denying indigent status does not violate the Eighth Amendment. As a result, Plaintiff's facial challenge to the constitutionality of MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ B(4) is without merit. His allegations against Defendants Heyns and Unknown Party #2 therefore will be dismissed.

Moreover, to the extent that Plaintiff alleges that Defendants Youngs, Smolinski, Hull, McKee, Morrow and Macauly violated the Eighth Amendment by denying or approving the denial of indigence status, he also fails to state a claim. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus*, 591 F.3d at 479-80 (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical claims); *see also Helling*, 509 U.S. at 35 (applying deliberate indifference standard to conditions of confinement claims)). As previously discussed, mere denial of indigent

status does not authorize any official to deny Petitioner necessary hygiene items or medical care. As a consequence, Plaintiff's allegations that Defendants Youngs, Smolinski, Hull, McKee, Morrow, and Macauly violated the Eighth Amendment by denying or approving the denial of indigence status fails to show that Defendants possessed the requisite subjective intent to deny Plaintiff's rights under the Eighth Amendment.[4]

### E. Denial of Pain Relievers, Medical Care and Dental Care

Plaintiff alleges that Defendants Leland, Gregurek, Cooley, Guernsey, and an unknown doctor (Unknown Party #1) denied him pain relievers, medical treatment, a toothbrush and dental treatment. Plaintiff's allegations against these Defendants are sufficient to state a claim under the Eighth Amendment. The Court therefore will order service of the complaint on Defendants Leland, Gregurek, Cooley, and Guernsey.[5]

### F. Medicine Bag

Plaintiff practices the Native American religion. He alleges that Defendants Miller, Shadick, Makara, and Unknown Defendant #3 took his religious medicine bag when they placed him in segregation. According to Plaintiff, the same Defendants insulted his religion and desecrated the bag, by pouring out the contents of the bag, fingering through it, and then returning some of the contents to the bag and disposing of the rest. Thereafter, Defendants Bennickson, Moyer, Hickok,

---

[4]Plaintiff does not allege that he specifically asked any of these Defendants for a toothbrush, toothpaste, or pain reliever. His complaints apparently were about the denial of indigent status only. Even if Defendants were aware that Plaintiff had been denied indigent status and had no money to buy additional such items, Plaintiff fails entirely to allege that any Defendant knowingly denied his request for basic hygiene and analgesics. In his complaint, Plaintiff states that he has not had a toothbrush, toothpaste or analgesics from February 2012 to some unspecified date. Plaintiff, however, did not arrive at IBC until March 27, 2012, and he fails to identify how long he was without the hygiene items at IBC. Instead, Plaintiff sweepingly alleges that he was without the items "for several months . . . ." (Compl., docket #1, Page ID#5.) Plaintiff's conclusory allegations fail to state a claim of deliberate indifference against any individual custody Defendant.

[5]The Court lacks sufficient information at this juncture to order service on Unknown Party #1.

Fryberger, Wickwire, and Hadden repeatedly denied his requests to return the medicine bag. Plaintiff alleges that Defendants violated his rights under the First Amendment and under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-1(a)(1)-(2). In addition, he contends that he was denied his right to equal protection because other inmates were permitted to keep their religious objects while in segregation, as specifically authorized by MICH. DEP'T OF CORR., Policy Directive 04.05.120 ¶ V(25), unless prohibited under Attachment B to the policy, which does not exclude medicine bags.

Upon review, the Court concludes that Plaintiff's claims regarding his medicine bag are sufficient to warrant service of the complaint on Miller, Shadick, Makara, Bennickson, Moyer, Hickok, Fryberger, Wickwire, and Hadden.[6]

### G. Supervisory Liability

To the extent that Plaintiff intends to allege that Defendants Youngs, McKee, Heyns, and Macauly are liable for the actions of their subordinates because they reviewed his grievances about alleged denials of necessary medical care and the right to practice his religion, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310

---

[6]The Court lacks sufficient information at this juncture to order service upon Unknown Defendant #3.

F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Youngs, McKee, Macauly, and Heyns engaged in any active unconstitutional behavior based on their failure to supervise their subordinates. Accordingly, he fails to state a claim against them.

### H. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel (docket #3). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (docket #3) will be denied.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, McKee, Youngs, Smolinski, Hull, Nevins, Morrow, Macauly, Randle, Novak, Frank, and Unknown Parties ##2 and 4 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against the remaining Defendants. Plaintiff's motion to appoint counsel will be denied.

An Order consistent with this Opinion will be entered.


Dated: September 4, 2013 /s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE